**FILED**

MAY - 9 2018

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | No. **18CR 286** |
| ) | |
| v. ) | |
| ) | Violations: Title 18, United States |
| XAVIER ELIZONDO, ) | Code, Sections 371, 641, and 1001(a) |
| also known as "X," and ) | |
| DAVID SALGADO ) | **JUDGE KENNELLY** |
| | **MAGISTRATE JUDGE COLE** |

## COUNT ONE

The SPECIAL AUGUST 2017 GRAND JURY charges:

1. At times material to this indictment:

    (a) The Chicago Police Department ("CPD") was an agency of the City of Chicago, a local government located in the Northern District of Illinois. The CPD received in excess of $10,000 in federal funding during the period from April 1, 2017, through March 31, 2018.

    (b) XAVIER ELIZONDO, also known as "X," was employed as a CPD officer. ELIZONDO held the position of sergeant and oversaw one of the CPD's Area Central gang teams assigned to Chicago's 10th District. As a CPD officer, ELIZONDO was an agent of the City.

    (c) DAVID SALGADO was employed as a CPD officer and was assigned to ELIZONDO's 10th District gang team. As a CPD officer, SALGADO was an agent of the City.

(d)  CPD officers could apply to State court judges for search warrants that would authorize the officers to enter and search physical locations, such as a home. A "J. Doe" search warrant was a particular type of search warrant that could be obtained from a State court judge by relying upon information provided by a confidential informant. In order to obtain a "J. Doe" search warrant from a State court judge, a CPD officer had to submit a search warrant application, including a sworn complaint that contained truthful information that justified the search of a particular location. In the sworn complaint, the CPD officer was required to detail the information provided by a confidential informant concerning criminal activity, and the confidential informant was referred to as "J. Doe" to protect the confidential informant's identity. The CPD officer was also required to bring the confidential informant before the State court judge, so that the judge could observe and examine the confidential informant to assess the truthfulness of the informant's information.

(e)  State law and CPD regulations required CPD officers to inventory property obtained from searches, and maintain custody of all seized property pending return of the property to the owner, or alternative judicial disposition of the property. State law and CPD rules precluded CPD officers from converting property obtained during searches to personal use, or using property obtained during searches to pay confidential informants.

(f)  Confidential Informant A was a resident of Chicago who, in exchange for payment, provided information to ELIZONDO and SALGADO in support of "J. Doe" search warrants.

(g) Confidential Informant B was a resident of Chicago who, in exchange for payment, provided information to ELIZONDO and SALGADO in support of "J. Doe" search warrants.

2. Beginning no later than in or around July 2017 and continuing until at least in or around January 2018, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

XAVIER ELIZONDO,
also known as "X," and
DAVID SALGADO,

defendants herein, did knowingly conspire with each other and with others known and unknown to the Grand Jury, to commit an offense against the United States, that is, to embezzle, steal, obtain by fraud, and otherwise without lawful authority knowingly convert to the use of any person other than the rightful owner and intentionally misapply, property that was valued at $5,000 or more that was under the care, custody, and control of the CPD, in violation of Title 18, United States Code, Section 666(a)(1)(A).

3. It was part of the conspiracy that defendants ELIZONDO and SALGADO agreed to steal and misapply property and evidence, such as United States currency, controlled substances, and cartons of cigarettes, recovered during searches they conducted in their capacity as CPD officers.

4. It was further part of the conspiracy that defendants ELIZONDO and SALGADO knowingly (i) submitted materially false "J. Doe" search warrant applications to State court judges; and (ii) caused individuals posing as "J. Doe"

confidential informants to provide false information to State court judges, in order to fraudulently obtain search warrants that would enable the defendants to enter and to seize property at various locations, and thereafter steal and otherwise misapply the property.

5. It was further part of the conspiracy that defendants ELIZONDO and SALGADO promised individuals providing information to the defendants concerning criminal activity and acting as "J. Doe" confidential informants that they would receive a portion of the property seized from search locations.

6. It was further part of the conspiracy that defendants ELIZONDO and SALGADO gave property seized from various search locations, including but not limited to United States currency, controlled substances, and cartons of cigarettes, to confidential informants in return for their information about illegal activity and their roles as "J. Doe" confidential informants.

7. It was further part of the conspiracy that defendants ELIZONDO and SALGADO concealed their theft and conversion of property by, among other things, falsifying police reports, including details therein about the amount of property, such as United States currency, seized from various search locations and the disposition of this property.

8. It was further part of the conspiracy that defendants ELIZONDO and SALGADO misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hid, the existence, purpose, and acts done in furtherance of the conspiracy.

9. To effect the objects of the conspiracy, defendants did commit the following overt acts, among others, in the Northern District of Illinois, Eastern Division:

(a) On or about October 17, 2017, defendant ELIZONDO distributed to Confidential Informant A a quantity of Phencyclidine (PCP) that was in the custody, care, and control of the CPD as a payment to Confidential Informant A for information provided by Confidential Informant A.

(b) On or about November 25, 2017, defendant SALGADO distributed to Confidential Informant B a quantity of marijuana in the custody, care, and control of the CPD as a payment to Confidential Informant B for information provided by Confidential Informant B.

(c) On or about December 18, 2017, after a confidential source (CS-1) told defendants ELIZONDO and SALGADO that he observed $25,000 and a quantity of narcotics inside a residence used by a drug dealer, defendant ELIZONDO told CS-1 that he would give CS-1 and Confidential Informant A a portion of any property recovered inside the residence after ELIZONDO and his CPD gang team searched it.

(d) On or about December 19, 2017, defendant SALGADO prepared a complaint in support of an application for a "J. Doe" search warrant of a residence that he knew contained materially false information.

(e) On or about December 19, 2017, defendants ELIZONDO and SALGADO caused Confidential Informant A to appear before a State court judge and

falsely pose as the source of information contained in the false "J. Doe" search warrant application.

(f) On or about December 19, 2017, defendant SALGADO falsely swore under oath to a State court judge that the information contained in the false "J. Doe" search warrant application was true and correct.

(g) On or about December 20, 2017, defendant ELIZONDO communicated on a cellphone with CS-1 while he, defendant SALGADO, and other CPD officers executed the false "J. Doe" search warrant.

(h) On or about January 28, 2018, defendants ELIZONDO and SALGADO stole approximately $4,200 in United States currency recovered during the search of an Enterprise rental vehicle in Chicago.

(i) On or about January 29, 2018, at approximately 4:54 p.m., after learning of an investigation relating to their search of the Enterprise rental vehicle, defendants ELIZONDO and SALGADO discussed SALGADO relocating stolen property.

(j) On or about January 29, 2018, at approximately 5:02 p.m., defendants ELIZONDO and SALGADO again discussed SALGADO removing stolen property from SALGADO's home.

(k) On or about January 29, 2018, defendant SALGADO departed work after his shift began.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

The SPECIAL AUGUST 2017 GRAND JURY further charges:

On or about January 28, 2018, at Chicago, in the Northern District of Illinois, Eastern Division,

XAVIER ELIZONDO,
also known as "X," and
DAVID SALGADO,

defendants herein, embezzled, stole, purloined, and knowingly converted to their own use money of the United States, namely, approximately $4,200 in United States currency belonging to the Federal Bureau of Investigation;

In violation of Title 18, United States Code, Sections 641 and 2.

## COUNT THREE

The SPECIAL AUGUST 2017 GRAND JURY further charges:

1. Paragraphs 1(b) and 1(c) of Count One of this indictment are incorporated here.

2. Beginning no later than in or around 2017, the Federal Bureau of Investigation began conducting a criminal investigation of ELIZONDO and SALGADO concerning potential violations of federal criminal law. That investigation included allegations that ELIZONDO and SALGADO were embezzling, stealing and converting to their use and to the use of others property obtained from various locations they had searched in their capacity as CPD officers.

3. On or about January 29, 2018, after ELIZONDO discovered the potential existence of an investigation of ELIZONDO and SALGADO, ELIZONDO instructed SALGADO to remove property from SALGADO's home.

4. One issue material to the investigation was whether, on or about January 29, 2018, SALGADO departed work after his shift began and returned home for the purpose of removing property from SALGADO's home.

5. On or about January 30, 2018, at Chicago, in the Northern District of Illinois, Eastern Division,

DAVID SALGADO,

defendant herein, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the Federal Bureau of Investigation, an agency within the executive branch of the

government of the United States, when he stated that he did not remember whether he had returned home on January 29, 2018, after initially leaving home for his 5 p.m. CPD shift.

In violation of Title 18, United States Code, Section 1001(a)(2).

A TRUE BILL:

_____<br>FOREPERSON

_____
UNITED STATES ATTORNEY