# EXHIBIT A

```
 1              MR. SCHMIEGE:  Please.
 2              THE COURT:  Okay.  That's?
 3              THE CLERK:  23rd.
 4              THE COURT:  Okay.  You can address that issue in your
 5    reply.  Hold off on anything about the procedural approval
 6    because we'll wait on that until after you've had the hearing.
 7              MR. SCHMIEGE:  Okay.
 8              THE COURT:  Okay.  That will give you plenty of
 9    advance notice on whether --
10              MR. SALIB:  Thank you, your Honor.
11              THE COURT:  -- you're going to need to bring in other
12    witnesses.  Okay.
13              All right.  Couple other things.
14              MR. SCHMIEGE:  Judge, I just have one more issue on
15    the wiretaps --
16              THE COURT:  Yes, sir.
17              MR. SCHMIEGE:  -- before we move on.  One of our
18    aspects of the suppression is based upon the fact that the
19    affiant is under federal indictment.  And I think we're
20    entitled to discovery as case discovery after what he's been
21    charged in in this building.  I think it's *Brady* material, and
22    I think it will help us develop our argument concerning that.
23              THE COURT:  Are you going to call him as a witness?
24              MR. SALIB:  Absolutely not, because we don't think
25    they're entitled to a hearing on that issue, as we briefed.
```

1           THE COURT: Well, I'm going to have to decide. There
2    is briefing on that. I haven't decided it yet. But of course
3    you'd get *Giglio* on him, most of which is public, if -- if they
4    were going to call him. They're not. So I'll give you a
5    ruling on that eventually.
6           Couple other motions that were out there.
7           MR. SHOBAT: Judge, before we abandon that.
8           THE COURT: Yeah.
9           MR. SHOBAT: A number of the pleadings that were filed
10   in that case are under seal, at least supporting affidavits and
11   the supporting material. I'm referring to the Elizondo
12   criminal case. There's been a motion to suppress filed on
13   his -- by his attorney in that case. And then both his
14   submissions are under seal, as are the government's responses.
15          So the underlying support for their motions is under
16   seal, which would reveal sort of the conduct that was taken by
17   the officer with respect to his charges, which involve him
18   falsifying affidavits before a court to get authorization, you
19   know, for searches or arrest.
20          So, obviously, our allegation involves this very same
21   officer at the very same time submitting --
22          THE COURT: Was it the very same time?
23          MR. SALIB: Absolutely not.
24          MR. SHOBAT: Very -- they overlap, Judge. There's
25   overlap because it was a sting operation by the government on

1 that officer. And they're nearly contemporaneous is my
2 understanding. Now --
3     THE COURT: The representation by the government from
4 what I read was they were different time periods. Would --
5     MR. SALIB: That's correct, Judge. The time periods
6 are very different, and they're separated by a number of years,
7 not just number of months, for example. The last affidavit in
8 this case was signed in January of 2013.
9     The conduct that defendant has just been -- of
10 Mr. Elizondo that has just been superseded on started in July
11 of 2017 at the latest -- excuse me -- at the earliest, or --
12 and there's conduct that is alleged to have happened later but
13 not earlier.
14     And so to the extent that this investigation -- that
15 the investigation into Officer Elizondo was long-standing and
16 long-running, I can represent that it was not.
17     Again, there are filings that are under seal. I'm
18 not, you know, attorney on that case. I can go look into that
19 and represent back to the Court ex parte, if necessary. But,
20 you know, I'm not going to step into another district court's
21 pending case with pending proceedings and pending motions.
22     THE COURT: Well, you can step into it to this extent.
23 Check on -- with the assistants or agents in that case. You
24 can certainly look as a representative of the government --
25     MR. SALIB: For sure.

THE COURT: -- at sealed filings the government's made and see if Mr. Elizondo's conduct in that case -- if there is anything about any allegation that that conduct in that case was predicated on previous bad conduct.

If his bad stuff was part of the sting, bad conduct started and the first the government knew of it was 2017, they have no information from informants or otherwise that he was engaged in falsifying information before that date, that's something you can learn from the filings and from discussions with assistants in your office.

If, in fact, they have predication either through informants or through other investigations they've done or proffers with people that have talked in that case that Elizondo has been a bad actor for a number of years, I need to know that, these lawyers need to know that, and then I need to factor that in to whether or not I allow discovery on Elizondo and whether he is -- whether that forms a basis to question the veracity of the affidavits used to support the wiretaps in this case.

So you need to check on all those things.

MR. SALIB: Very well.

THE COURT: And you can prepare a report. Give you 30 days to prepare a report. To the extent you can file it publicly, so be it. If you want to file it under seal but make it accessible to the defense lawyers, you can do that. And if

you want to file it *in camera*, you can file it *in camera* and I'll make a determination whether the defense lawyers need to see it.

But I think Mr. Shobat raises a good point. And by the time that case -- your case goes to trial, this all may be a matter of public record because the Elizondo case may have gone to trial by then. But who knows.

Okay. Anything else on wiretaps at this time? The key issue is setting a hearing date. Anything else from anyone?

(No response.)

THE COURT: Okay. Defendant Chatman. I know Mr. Adams isn't here, but who is standing up for him?

MR. SCHMIEGE: I am, your Honor.

THE COURT: Okay. He filed a motion to dismiss the indictment for violation of the commerce clause. He says that the Four Corner Hustlers are a noneconomic intrastate street gang that does not have a substantial effect on interstate commerce and that they are really more a matter of a group of people connected by geography but no formal structure and that they have no --

To quote: "From the wiretap conversations, and various state drug conviction" -- "drug and gun convictions, it appears that [Four Corner Hustler] members [are] merely a rag-tag group of people who grew up in the same neighborhood