UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 18 CR 286 |
| v. ) | |
| ) | Hon. Matthew F. Kennelly |
| XAVIER ELIZONDO, aka "X," and ) | |
| DAVID SALGADO ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM ADDENDUM**

The United States of America, by and through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby respectfully submits this addendum to its joint sentencing memorandum.

**I.     Objections to the PSR**

*A. The Two-Level Loss Amount Enhancement Applies to Count 1*

The government objects to the PSR's finding that the enhancement for a loss amount of between $6,500 and $15,000 does not apply (See Elizondo PSR, ¶ 31; Salgado PSR, ¶ 33). A loss amount of $4,200 is established by the Count Three conviction alone (the rental vehicle theft). The evidence at trial further demonstrated by a preponderance that, before discovering the FBI's cameras, defendants intended to steal at least another $2,300 from the Maplewood Apartment.

Specifically, during their introductory meeting on December 18, 2017, Cuba explained to defendants that he purchased pound quantities of marijuana from the occupant of the Maplewood Apartment, and made a profit of $800/day by reselling the marijuana. Gov. Ex. 101-1, 2. Elizondo responded, "That's $800 you're no longer

1

gonna have doing what you doing. So . . . we know it's gotta be worth your while." *Id*. The only reasonable way to interpret this statement (in the context of Elizondo's explicit promises to give Cuba and Davis a "cut" of any materials recovered inside the apartment) is that Elizondo intended to give Cuba <u>substantially</u> more than $800 in stolen money from the Maplewood Apartment. Further, based on the December 28, 2017 consensually recorded phone call between Elizondo and Cuba, Elizondo had also intended to steal significant additional funds from the Maplewood Apartment such that he, Salgado, and Davis could also have a "good Christmas." Gov. Ex. 101-10, 3.

During the search of the rental vehicle, the defendants stole $4,200 out of $18,200—roughly 23 percent. To trigger the enhancement, the Court would simply have to conclude that the defendants originally intended to take at least 15% ($2,300) of the $15,000 from the Maplewood Apartment. The evidence supports this finding.

Additional evidence supports the loss amount enhancement. First, Davis and Gipson testified at trial that Elizondo gave them a total of between $5,500 and $6,000 in cash during the conspiracy. 10/16/19 Tr. 1599-1600, 1701, 1785. Both witnesses testified credibly on these points, and neither have any apparent motivation to lie about these figures. Considerable independent evidence, and common sense, show that Elizondo stole the money that he used to pay Gipson and Davis.

Specifically, Elizondo explained to Cuba in detail on December 18, 2017, that he and Salgado paid informants with cash that they stole from search locations. One month later, defendants did in fact steal $4,200 from the rental vehicle. Elizondo was obviously not paying informants thousands of dollars out of his own pocket.

2

Finally, Davis and Gipson testified that defendants gave them narcotics and cigarette cartons with a combined street value of around $1,500. *See* Elizondo PSR, ¶ 31. The testimony was credible, it is cross-corroborative, and it is reasonable on its face (*e.g.* a pack of cigarettes costs about $10. There are typically 10 packs of cigarettes in a carton. It is credible that cartons can sell for $70-$85 on the street).

B. *The Sophisticated Means Enhancement Applies to Count One*

The Government objects to the PSR's finding that the §2B1.1(b)(10)(C) enhancement does not apply (Elizondo PSR, ¶ 32; Salgado PSR, ¶ 34). The question is whether, viewed in the aggregate (rather than parsing individual steps), the Count One conspiracy involved a greater level of planning or concealment than the typical police theft case. *See U.S. v. Wayland*, 549 F.3d 526, 528-29 (7th Cir. 2008).

It clearly did. A typical police theft case might involve an officer stopping someone on the street and stealing cash recovered on their person. Here, defendants obtained false search warrants to gain access to private locations where they knew there would be large amounts of cash to steal. This involved recruiting informants who were willing to lie for them, drafting false warrants, coaching the informants, lying under oath to judges, and deceiving fellow officers during the execution of the warrants. Defendants further concealed their activities by generating false police reports and falsifying inventory sheets. In the context of police theft, defendants' conduct was "especially complex and intricate." Application Note 9(B).

## II. The PSR Correctly Applied the Firearm Enhancement to Group 1[1]

Defendants manipulated their police powers to search, detain, and arrest in order to rob and steal. The *ability* to use force is a necessary component of these powers; carrying firearms is the embodiment of that ability. Defendants' possession of firearms allowed them to compel their victims, including James Johnson, to submit to the bogus searches/detentions, which created the opportunities to steal. Further, defendants targeted people whom they believed to be drug dealers. Obviously, defendants would never have entered these individuals' homes and stolen from them unless they were armed. It does not matter whether defendants brandished their firearms—possession alone cloaked the sham raids in authority, and allowed defendants to exercise control over their victims and secure themselves while stealing property. *See U.S. v. Shamah*, 624 F.3d 449, 459 (7th Cir. 2010) ("The district court did not err . . . in applying the [§ 2B1.1(b)(16)(B)] enhancement[ ]] on the grounds that weapons were possessed *or* brandished during these encounters...") (emphasis added)).

Respectfully submitted.

JOHN R. LAUSCH, JR.
United States Attorney

By: /s/ *Sean J.B. Franzblau*
Sean J.B. Franzblau
Assistant United States Attorney

---

[1] The evidence at trial proved that the defendants openly carried firearms while conducting searches in which they stole or intended to steal. *See, e.g.*, Gov. Exs. 503-1; 008.